IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GWENDOLYN BARRANCE,           §
                             §
            Plaintiff,        §
                             §
V.                           §          No. 3:12-cv-71-BN
                             §
CAROLYN W. COLVIN,            §
Acting Commissioner of Social Security,  §
                             §
            Defendant.        §

## MEMORANDUM OPINION AND ORDER

Plaintiff Gwendolyn Barrance, appearing through counsel, seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed in part and affirmed in part and remanded for further proceedings.

### Background

Plaintiff alleges that she is disabled due to a variety of ailments, including collapsed lung, carpal tunnel syndrome, hypertension, swelling in her feet, arthritis in her right knee, migraine headaches, difficulty breathing, and depression. After her application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge. Two separate hearings were held, the first on September 1, 2010, and the second on April 27, 2011. At the time of the second hearing, Plaintiff was 48 years old. She

-1-

completed the ninth or tenth grade and has past work experience as a home health aide. Plaintiff has not engaged in substantial gainful activity since October 14, 2008.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that Plaintiff suffered from severe impairments from carpal tunnel syndrome, arthralgias and unspecified neuralgia, migraine headaches, and major depressive disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a cleaner/housekeeper, a marketing clerk, and a ticketer – jobs that exist in significant numbers in the national economy.

Plaintiff appealed that decision to the Appeals Council. The Council denied Plaintiff's request for review, and the ALJ's decision became final.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two grounds: (1) the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence and (2) the ALJ's reliance on noncompliance when making the disability determination is not supported by substantial evidence and does not comply with the relevant Social Security Ruling ("SSR").

The Court determines that the hearing decision must be reversed in part and this case remanded to the Commissioner for further proceedings consistent with this opinion.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 99333U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued

period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant

from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v.*

*Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

### ALJ's Evaluation of Medical Evidence

Plaintiff first contends that the ALJ's RFC finding is not supported by the treating and examining physicians' opinions in the record. Plaintiff's argument appears to be entirely based on Plaintiff's mental health impairments.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (internal quotations omitted). However, the ALJ is "free to reject the opinion of any physician when the evidence supports a

contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Social Security Administration ("SSA") Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors that an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2). Specifically, this regulation requires consideration of:

> (1) the physician's length of treatment of the claimant;
>
> (2) the physician's frequency of examination;
>
> (3) the nature and extent of the treatment relationship;
>
> (4) the support of the physician's opinion afforded by the medical evidence of record;
>
> (5) the consistency of the opinion with the record as a whole; and
>
> (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(c).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. However, in decisions construing

*Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(d) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

In this case, there are few treating physician records regarding Plaintiff's mental health that should be afforded controlling weight. Only "acceptable medical sources" can be considered treating sources, as defined in 20 C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513, 416.913 (2011) (listing acceptable medical sources as licensed physicians, psychologists, podiatrists, and speech-language pathologists); *Reynolds v. Astrue*, No. 1:08cv228-SAA, 2010 WL 583918, at *7 (N.D.Miss. Feb. 16, 2010) (noting that a nurse practitioner is considered an "other medical source" under 20 C.F.R. § 404.1513). Further, the Fifth Circuit has recognized that the opinion of an "other medical source," even one who has treated the claimant on a regular basis, is not entitled to the same deference as an opinion provided by an "acceptable medical source." *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009). "Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight." *Id.* Although Plaintiff received mental health treatment from

Metrocare, the records appear to be signed, for the most part, by "qualified mental health professional[s]" or "advanced practice nurse[s]." *See, e.g.*, Dkt. No. 18-11 at 668, 669. Absent contrary evidence in the record – that is, evidence that would show the Court the qualifications of a "qualified mental health professional" – these sources are not "acceptable medical sources," entitled to controlling weight.

The record contains a few assessments from acceptable medical sources that could be entitled to controlling weight. For example, Dr. Hari Kumaresan diagnosed Plaintiff with "major depressive disorder, recurrent, severe with psychotic features" and assessed a GAF score of 40. *Id.* at 710.

Dr. Susan Talmage, the consultative examiner, is not a "treating" physician entitled to controlling weight. However, as Plaintiff points out, more weight is generally given to the opinion of an examining physician, even though she did not treat the claimant, than to a non-examining physician's opinion. *See* 20 C.F.R. § 404.1527(c)(1); *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990) (ALJ may rely on a non-examining physician's assessment only where it does not contradict the examining physician).

In this case, Plaintiff's mental health treatment records from Metrocare and Dr. Talmage's clinical interview mental status examination (the "Talmage Examination"), *see* Dkt. No. 18-12 at 720-728, were the only medical opinions on Plaintiff's mental health in the record discussed by the ALJ. The three Residual Functional Capacity Assessments in the record address Plaintiff's physical impairments and do not discuss

Plaintiff's mental health. *See* Dkt. No 18-9 at 470; Dkt. No. 18-10 at 572; Dkt. No. 18-10 at 640.

Dr. Talmage's assessment methods included a clinical interview, a mini-mental status exam, and a structured inventory of malingered symptomatology. The Talmage Examination noted that Plaintiff "endorsed visual and auditory hallucinations." Dkt. No. 18-12 at 723. Plaintiff scored a sixteen on the Folstein Mini-Mental Status Exam, indicating Severe Cognitive Impairment. *See id.* The Talmage Examination noted that Plaintiff's "lack of impulse control and depressive symptoms has kept her from maintaining a job," *id.* at 724, and stated that, "[c]onsidering her severe mental health issues, it is unlikely she will be able to maintain employment until she is stable," *id.* at 725.[1] However, in the Medical Source Statement of Ability to Do Work-Related Activities (Mental) completed by Dr. Talmage, Plaintiff's only marked limitation was her ability to "interact appropriately with supervisor(s)." *See id.* at 727. The records from Metrocare indicate that Plaintiff experienced, and received treatment from, depression and anxiety from approximately November 2009 to March 2011. *See* Dkt. No. 18-11 at 649-718; Dkt. No. 18-12 at 730-754. Both Metrocare and Dr. Talmage evaluated Plaintiff's Global Assessment of Functioning ("GAF") to be 40. Although a

---

[1] Defendant correctly points out that a physician's opinion that a claimant is "disabled" or "unable to work" is not the type of doctor's opinion that is ever given controlling weight or even "special significance." *See* Dkt. No. 24 at 15-6 (citing *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir. 2003)). However, Dr. Talmage's statements that Plaintiff lacked impulse control and had severe mental health issues were entitled to, and apparently not given, consideration.

low GAF score is not prima facie evidence of a disability, *see Hawkins v. Astrue*, No. 3:09-cv-2094, 2011 WL 1107205, at *6 n.4 (N.D. Tex. Mar. 25, 2011), as the ALJ acknowledged, it does indicate serious symptoms or major impairment in social, occupational, or school functioning, *see* Dkt. No. 18-2 at 27.

The ALJ addressed only the portion of the Talmage Examination related to Plaintiff's interaction with supervisors. *See id.* at 25. The ALJ discounted the Talmage Examination's assessment that Plaintiff had a marked limitation in interacting with supervisors for two reasons: (1) Plaintiff was noncompliant with treatment and (2) the limitation was based solely upon Plaintiff's complaint that she has problems with authority. *See id.* Although the ALJ found Plaintiff's allegations of mental symptoms to be "somewhat credible" based on the pattern of pursuit of psychiatric symptom relief through mental health treatment, the ALJ determined that the intensity, persistence and limiting effects of these symptoms were not credible based on Plaintiff's less-than-total compliance with her treatment. *See id* at 27.

The ALJ has wide discretion regarding credibility matters, and the Court does not question the ALJ's credibility determination. However, the ALJ's reliance on Plaintiff's less-than-total compliance with her treatment program as a basis for discounting all of the objective evidence – Plaintiff's medical records and treatment history, the Talmage Evaluation, and Plaintiff's two GAF scores of 40 – is not supported by substantial evidence. *See, e.g.*, *Armstrong v. Astrue*, No. 1:08-cv-045-C, 2009 WL 3029772, at *9 (N.D. Tex. Sept. 22, 2009) ("In making his credibility

determination, the ALJ did not adequately describe his basis for rejecting ... evidence."); *McNewal v. Colvin*, No. 3:11-cv-02612-BH, 2013 WL 1285472, at *30 (Mar. 28, 2013) (ALJ's rejection of consultative mental RFC not supported by substantial evidence where rejection was not based on concrete medical evidence); *see also Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("[A]n ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.").

The Court further notes that Plaintiff was, at times, noted to be compliant with her treatment but that her mental health provider repeatedly noted that her treatment response to medication was "minimal" to "partial" and that her prescriptions were changed as a result of ineffectiveness in controlling her symptoms. Dkt. No. 18-11 at 658-59, 666, 667. Put simply, the several instances of Plaintiff's noncompliance with treatment cited by the ALJ are not sufficient to outweigh <u>all</u> of the objective medical evidence tending to support Plaintiff's claim of a disability.[2]

"The disability determination or hearing decision must be set forth carefully. The rationale must reflect the sequential evaluation process; describe the weight

---

[2] Defendant asserts that Dr. Talmage "questioned the validity of Plaintiff's responses, noting that several tests all suggested that Plaintiff was malingering or feigning her symptoms." *See* Dkt. No. 24 at 15. Dr. Talmage does not appear to ultimately reach the conclusion that Plaintiff was malingering, because she determines that Plaintiff's symptoms have kept her from maintaining a job. *See* Dkt. No. 18-2 at 724-25. In any case, the ALJ did not consider whether Plaintiff malingered during the Talmage Examination; therefore, the undersigned does not believe Defendant's argument has any bearing on the Court's decision.

attributed to the pertinent medical, nonmedical and vocational factors in the case; and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence." SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986). In this case, the record, read as a whole, does not yield such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000).

The ALJ failed to properly evaluate Plaintiff's medical evidence. Plaintiff was substantially prejudiced because a proper consideration and evaluation of the medical evidence might have resulted in a finding of disability. *See Gittens v. Astrue*, No. 3:04-cv-2363-L, 2008 WL 631215, at *6 (N.D. Tex. Feb. 29, 2008) (citing *Ripley*, 67 F.3d at 557 n. 22). The decision is the result of legal error and is unsupported by substantial evidence. This case is reversed and remanded to the Commissioner for further proceedings.

<u>Credibility Determination</u>

The Court notes that, under the social security regulations, the failure to follow a prescribed course of treatment "without a good reason" precludes a finding of disability. *See* 20 C.F.R. § 416.930(b); *see also id.* § 404.1530(b). The ALJ must develop the record to determine whether the claimant justifiably failed to undergo the treatment prescribed. *See* SSR 82-59, 1982 WL 31384 at *2 (S.S.A. 1982). If the evidence suggests that the claimant does not have a good reason for failing to follow the prescribed treatment, the claimant must be informed of that fact and of its effect

-13-

on the eligibility for benefits. *See id.* at *5. The claimant must be afforded an opportunity to comply with the prescribed treatment or to show "justifiable cause" for failing to do so. *Id.* However, these procedures "only apply to claimants who would otherwise be disabled within the meaning of the Act." *Hawkins*, 2011 WL 1107205, at *2-3 (internal citations omitted).

The Court, after reviewing the ALJ's decision as a whole, concludes that the ALJ did not base his denial of benefits on Plaintiff's noncompliance with taking her medication but, instead, found that such noncompliance undermined Plaintiff's credibility. Because the case does not fall squarely under SSR 82-59, "any lack of notice and opportunity required by that ruling does not give rise to reversible error." *Seibert v. Astrue*, No. 4:09-cv-90-A, 2010 WL 6389303, *10 (N.D. Tex. June 14, 2010) (citing *C.M.F. v. U.S. Comm'r of Soc. Sec. Admin*, No. 08-CV01942, 2009 WL 5175187, at *4 (W.D.La. Dec. 18, 2009)); *cf. Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990) (stating that, because there was no evidence, besides the claimant's own testimony, that he was disabled with or without regular medical treatment, the ALJ was not precluded from relying upon the lack of treatment as an indication that the claimant was not disabled).

## Conclusion

The hearing decision is reversed in part and affirmed in part, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

DATED: May 2, 2013

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE